UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
GEORGE PETRE,

                                      Civil Case No.

                Plaintiff,

  -against-                          **COMPLAINT**

C.R. WALLAUERS & CO., INC.,
DUNWEST REALTY, LLC, ROBERT DUNCAN,
JR., AMELIA DUNCAN, JOHN DOES 1-10 and
JANE DOES 1-10,
                       Defendants.
-----------------------------------------------------------------X

        Plaintiff GEORGE PETRE ( hereinafter "Plaintiff" or "PETRE"), by and through

his attorneys, Bisceglie & Associates, P.C., hereby files this Complaint against Defendants,

C.R. WALLAUERS & CO., INC., ("WALLUERS"), DUNWEST REALTY, LLC

("DUNWEST"), ROBERT DUNCAN, JR ("DUNCAN"),  AMELIA DUNCAN ("A.

DUNCAN"), JOHN DOES 1-10 and JANE DOES 1-10 (each individually, "Defendant"

or, collectively, "Defendants"), and states as follows:

### NATURE OF ACTION

1.    This is a civil action in which Plaintiff, a former employee of Defendants, asserts

claims for violation of the Whistleblower Protection Act; the Family and Medical Leave

Act; violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101 and ADA

Amendment Act of 2008 (hereinafter "ADA");Wrongful Termination claim due to filing a

Workers Compensation Claim; Libel; and Breach of Contract.

2.    All conditions precedent to jurisdiction under Chapter 21, Subchapter VI, 42 U.S.C.

§2000e-5(f)(3), have occurred or been complied with:

a. A charge of employment discrimination on the basis of disability was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the commission of the unlawful employment practice alleged herein.

b. A Notification of Right to Sue was received from the EEOC on December 4, 2017.

c. This complaint has been filed within 90 days of receipt of the EEOC's Notification of Right to Sue.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343, and has supplemental jurisdiction over Plaintiffs state law claims pursuant to 28 U.S.C. § 1367.

## PARTIES

4. Plaintiff is an individual residing within the State of New York, County of Westchester and was employed by Defendants for approximately eight (8) years, from August 2009 to January 2017.

5. Defendant WALLAUERS is a domestic corporation organized pursuant to the laws of the State of New York, with a Corporate residence of 30 Virginia Rd, North White Plains, New York 10603.

6. Defendant WALLAUERS is a foreign corporation duly authorized to do business in the State of New York, with a Corporate residence of 30 Virginia Rd, North White Plains, New York 10603.

7. Defendant DUNWEST is a domestic corporation organized pursuant to the laws of the State of New York, with a Corporate residence of 30 Virginia Rd, North White Plains, New York 10603.

8.      Defendant DUNWEST is a foreign corporation duly authorized to do business in the State of New York, with a Corporate residence of 30 Virginia Rd, North White Plains, New York 10603.

9.      Defendant ROBERT DUNCAN, JR., ("DUNCAN") is an individual residing at 12 Tall Woods Road, Armonk, New York 10504.

10.     Upon information and belief, Defendant, DUNCAN, is an owner, officer, director and/or managing member of the Defendant WALLAUERS and DUNWEST, and exercised control over the terms and conditions of Plaintiffs employment.

11.     Defendant AMELIA DUNCAN ("A. DUNCAN") is an individual residing at 12 Tall Woods Road, Armonk, New York 10504.

12.     Upon information and belief, Defendant, DUNCAN, is an owner, officer, director and/or managing member of the Defendant WALLAUERS and DUNWEST, and exercised control over the terms and conditions of Plaintiffs employment

13.     Defendants "John Does 1-10" and "Jane Does 1-10" are and were individuals, corporations and subsidiaries residing within the State of New York. At all relevant times hereto, Defendants "John Does 1-10" and "Jane Does 1-10" are and were subsidiaries, members and/or employees of the Defendants and are being sued in their individual and official capacities.

## FACTS

14.     Plaintiff was hired by the Defendants on or about August 10, 2009.

15.     Plaintiff was first hired as the Comptroller.

16.     In or about 2013, Plaintiff was promoted to Chief Financial Officer ("CFO")

17.     When Plaintiff was hired, WALLAUERS' sales were approximately seventeen million ($17,000,000.00) dollars.

18.     Solely under Plaintiff's tenure, sales increased by seven million ($7,000,000.00) dollars.

19.     As CFO, Plaintiff was responsible for not only the financial operations of Defendants but operations and sales as well.

20.     DUNCAN was an absentee owner/CEO and left most operational and sales strategy to Plaintiff.

21.     DUNCAN's two (2) daughters were employed by WALLAUERS.

22.     One daughter, Donna Duncan, was an absentee employee and no more than bi-annually, would appear at the store for meetings then return to her home in Florida.

23.     Upon information and belief Donna Duncan neither had or has the experience nor ability to operate, manage or otherwise run a company.

24.     The other daughter, Debora Duncan, was and presumably still is in charge of advertising.

25.     Further, over a period three (3) years, Plaintiff was responsible for the opening of four (4) new locations.

26.     During his tenure, Plaintiff was further responsible for entering into a franchise agreement with ACE Hardware and brought ACE Hardware into four (4) locations.

27.     Plaintiff's compensation was based on a fifty (50) hour, hourly work rate although Plaintiff worked over sixty-five (65) hours per week.

28.     Plaintiff's excessive work hours began to affect his physical and mental health.

29.     Plaintiff requested that Defendants reduce his work hours, but Defendants denied his request.

### AS FOR A FIRST CAUSE OF ACTION Whistleblower Retaliation
### Whistleblowers Protection Act, under New York Labor Law §740

30.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 to 29 above as if set forth at length herein.

31.     During his tenure as the Comptroller and CFO, Plaintiff became aware of improper acts by the Defendants.

32.     Plaintiff brought these irregularities to the attention of his superiors including DUNCAN, A. DUNCAN and their outside attorney but was told that it was none of his concern.

33.     Such issues include but are not limited to: Payment for maintenance and repairs to DUNCAN and his family's personal residences, including but not limited to: DUNCAN'S daughter Debora's roof and gardening expenses; expenses for DUNCAN personal vehicles; 1099 to certain individuals for payments that were not business or employment related; 1099 for DUNCAN's mother nurse's aide/companion; Maintaining employment of undocumented workers; Bonuses, from painter manufacturer and supplier Benjamin Moore that were used to pay undocumented workers employed by WALLAUERS in cash; DUNCAN was having WALLAURES reimburse him over one million five hundred thousand ($1,500,000.00) dollars for stock purchased after the death of a partner; Defendants' improper credit and debits to and from each entity; DUNCAN's failure to report capital gains on three (3) real estate properties he sold contrary.

34.     All the improprieties were brought to the attention of the Defendants by Plaintiff without proper resolution.

35.     In September of 2016, Plaintiff started to receive harassing phone calls and texts from Donna Duncan about work and personal matters after Plaintiff reported the improprieties.

36.     In October 2016, he advised DUNCAN of such harassing contacts.  No action was taken by DUNCAN.

37.     In or about December 2016, an audit of the company was conducted where some of the above and other improprieties were discovered.

38.     Prior to the audit, Defendants A.DUNCAN and DUNCAN met with Plaintiff and wanted him to help "cover up" the impropriates which the Plaintiff refused to do.

39.     Upon Plaintiffs refusal to "cover up" the improprieties A. DUNCAN told the Plaintiff to "stop being a little Jew and just do it" and further intimidated him for his refusal.

40.     Plaintiff grew distressed and feared retaliation and possibly losing his job for refusing.

41.     During the audit, Plaintiff informed the auditor of the improprieties, after which Defendants and their agents commenced to engage in a systematic attack on Plaintiff.

42.     In what appears to be retaliation by Defendants against the Plaintiff on blowing the whistle regarding the improprieties, they required him to work over one hundred (100) hours per week to complete an evaluation of the company and its holdings.

43.     Defendants further retaliated by forcing Plaintiff to repay private mortgage loans held by Defendants and issued to Plaintiff.  Contrary to all financial documents, DUNCAN accelerated the payoff of the Plaintiff's loan consummated one (1) year prior in 2015. Though the Defendants were in breach of the finance agreement, they compelled Plaintiff to pay the entire interest for the five (5) year term.

44.     Plaintiff's complaints about Defendants' improper actions, such as failure to comply with Capital Gains Reporting, were activities protected under the New York Whistleblowers Act, New York Labor Law §740.

45.     Defendant DUNCAN is an individual tortfeasor under New York State Law.

46.     Defendants' actions constitute retaliation within the meaning of New York Labor Law §740.

47.     Defendants' actions violated New York Labor Law §740.

48.     Defendants retaliation and ultimate termination of Plaintiffs employment were connected to Plaintiff's whistleblowing activities.

49.     As a direct and proximate cause of Defendants' unlawful employment practices, Plaintiff has sustained, and will continue to sustain, loss of earnings and other financial damages and has suffered, and continues to suffer, mental anguish.

## AS FOR A SECOND CAUSE OF ACTION
### The Family and Medical Leave Act 29 U.S.C.A. § 2601 et seq.

50.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 to 49 above as if set forth at length herein.

51.     Plaintiff's wife was undergoing medical treatments and surgery for a serious illness in the Fall of 2016, the Plaintiff requested an easing of the retaliation and work hours to no avail.

52.     Plaintiff requested a reduction of his seven (7) days, sixty-five (65) plus hours, a week work schedule to accompany his wife to medical exams and treatment.

53.     A. DUNCAN called his home and other numbers, including his wife's employer, to verify the veracity illness and the medical visits.

54.     Defendants required Plaintiff to report to work immediately after any medical exams and treatments he attended with his wife.

55.     When Plaintiff was tending to his wife he would receive constant phone calls and text messages from Defendants and their agents demanding to know when he would return to work.

56.     Defendants deterred him from requesting days off to accompany his wife for medical exams and treatments.

57.     Under the Family Medical Leave Act 29 U.S. Code section 2612(c) it states that an employee is entitled to leave "In order to care for the spouse, son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition."

58.     Plaintiff's wife had a serious health condition and despite Plaintiff's repeated request for leave to tend to his ill wife Defendants denied his request for a reduced work schedule and harassed him on the few occasions that was tending to his wife.

59.     Knowing Plaintiffs wife was very seriously ill the Defendants continued to harass Plaintiff and required him to work despite his request for leave to tend to his ill wife causing Plaintiff emotional distress.

60.     At all relevant times, Plaintiff was an "employee" for purposes of the Family and Medical Leave Act 29 U.S.C.A. § 2601 et seq. ("FMLA").

61.     By its actions detailed above, Defendant has unlawfully discriminated against Plaintiff on the basis of utilizing his rights under the FMLA, in violation of Federal and State Law.

62.     Upon information and belief, Defendant's conduct toward Plaintiff constitutes willful discrimination based on the FMLA.

8

63.    As a result of the willful discrimination described above, Plaintiff was denied his rights under the FMLA, thereby suffering extreme emotional distress, substantial loss of earnings and benefits, and will continue to do so in the future.

64.    Accordingly, Defendants are liable to Plaintiff for both back pay and front pay in an amount as yet undetermined, damages for mental anguish, plus interest and costs.

## AS FOR A THIRD CAUSE OF ACTION
### Americans With Disabilities Act

65.    Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 to 64 above as if set forth at length herein.

66.    Throughout the course of his employment with the Defendants, Plaintiff performed his work beyond satisfactorily, always performing all essential duties and functions.

67.    Plaintiff was terminated from his job due to his disability, which did not impair or hinder his job performance.

68.    Plaintiff's excessive work hours affected his mental and physical health.

69.    On the advice of his doctor he was told to not only take time off of work but to cut down his work hours because the stress of his job caused his heart condition and could ultimately cause him to suffer a heart attack.

70.    Plaintiff requested a "reasonable accommodation" within the meaning of Section 101(9) of the ADA, 42 U.S.C. §12111(9)(b), from the Defendants in that he wanted to modify his work schedule which the Defendants denied.

71.    Plaintiff feared that he would be terminated due to his disability.

72.    Plaintiff is a "qualified individual with a disability" within the meaning of Section 101(8) of the ADA, 42 U.S.C. §12111(8), in that Plaintiff is an individual with a disability

who, with or without reasonable accommodation, can perform the essential functions of the position.

73.     The Defendants denied Plaintiff's request for a "reasonable accommodation."

74.     Upon information and belief, Defendant's conduct toward Plaintiff constitutes willful discrimination.

75.     By its actions detailed above, Defendant has unlawfully discriminated against Plaintiff on the basis of a disability in violation of 42 U.S.C. 121 12. Defendant's conduct toward Plaintiff constituted willful discrimination.

76.     Upon information and belief, Defendants were aware of the aforementioned discriminatory employment practices taken against Plaintiff, knowingly participated in such discriminatory practices and actions, and failed to take remedial action to correct these abuses.

77.     Defendants willfully engaged in the aforementioned discriminatory practices and acted with malice and/or reckless indifference to Plaintiff's rights under the ADA.

78.     Defendant's acts and/or omissions were in direct retaliation for Plaintiff's complaints of discrimination against Defendants.  Plaintiff has sustained, and will continue to sustain, loss of earnings and other financial damages and has suffered, and continues to suffer, mental anguish.

## AS FOR A FOURTH CAUSE OF ACTION
### Wrongful termination

79.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 to 78 above as if set forth at length herein.

80.     On or about February 1, 2017, Plaintiff was rushed to the hospital under suspicions of a heart attack.

81.     On or about February 1, 2017, Plaintiff informed the Defendants that he was taken to the hospital and that he was required to be admitted for observation.

82.     Defendants took umbrage that Plaintiff was required to remain out of work for approximately two (2) weeks per his treating physician.

83.     Plaintiff kept Defendants apprised of his scheduled procedures and doctor's recommendations.

84.     Plaintiff became worried during his leave that Defendants were upset with him and feared losing his job.

85.     Due to Plaintiff's condition he filed a worker's compensation claim since the stress and excessive work hours caused his health to deteriorate.

86.     Upon filing the workers compensation claim Plaintiff informed the Defendants immediately.

87.     Defendants terminated Plaintiff almost immediately after he fielded the worker's compensation claim.

88.     Defendants fired the Plaintiff for filing a worker's compensation claim.

89.     Upon termination, Defendants failed to properly compensate Plaintiff to time worked, including but not limited to unused vacation time and personal time accrued, and Performance Bonus for the last quarter of 2016.

90.     As a direct and proximate cause of Defendants' wrongful termination, Plaintiff has sustained, and will continue to sustain, loss of earnings and other financial damages and has suffered, and continues to suffer, mental anguish.

## AS FOR A FIFTH CAUSE OF ACTION
### Libel

91.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 to 90 above as if set forth at length herein.

92.     After Plaintiff's termination, Defendants gave false and misleading representations to third parties and employee as to why he was terminated.

93.     In February 2017, after the Plaintiff was terminated, the Defendants drafted or caused to draft and then circulated an e-mail containing false, defaming and libelous statements to employees pertaining to Plaintiff's termination.

94.     Upon information and belief the above-mentioned email contained false reasons for Plaintiffs termination suggesting that Plaintiff engaged in improper activities as CFO and accepted bribes and stole from the company.

95.     Plaintiff had no control nor access over banking, check drafting, and execution on behalf of the company.

96.     These statements were false with the tendency to injure Plaintiff's reputation and character.

97.     As a direct and proximate cause of Defendants' unlawful and libel statements, Plaintiff has sustained, and will continue to sustain, loss of earnings and other financial damages and has suffered, and continues to suffer, mental anguish.

## AS FOR A SIXTHCAUSE OF ACTION
### Breach of Contract

98.     Plaintiff repeats and realleges each and every allegation contained in Paragraphs 1 to 97 above as if set forth at length herein.

99.     Plaintiff and Defendants entered into an "Executive Retention Bonus Agreement" on April 14, 2014.

100.    The terms of the above Agreement were to capture Plaintiff as an employee for a period of ten (10) years and to ensure proper compensation via the purchase of a life insurance policy which would be paid for by Defendants.

101.    Upon the  termination of Plaintiff without cause, Defendants ceased to make payments of the life insurance policy in violation of the Agreement.

102.    As a direct and proximate cause of Defendants' unlawful termination of Plaintiff, Plaintiff has been forced to make payments in excess of ten thousand ($10,000.00) dollars to maintain the life insurance policy.

103.    Plaintiff will continue to sustain, loss of earnings and other financial damages and has suffered, and continues to suffer, mental anguish due to the actions of the Defendants.

        **WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally, for compensatory damages, punitive damages, interests, costs of suit, and such other relief as this Court may deem equitable and just.

**JURY DEMAND**

        Plaintiff demands trial by jury as to all causes of action.

**DESIGNATION OF TRIAL COUNSEL**

        Angelo R. Bisceglie, Jr., Esq. is hereby designated as trial counsel in this matter pursuant to R. 4:5-1(c).

Dated: Mineola, New York
       February 23, 2018

13

Respectfully Submitted,
***BISCEGLIE & ASSOCIATES, P.C.***

   s/Angelo R. Bisceglie, Jr.
Angelo R. Bisceglie, Jr., Esq.(ARB9251)
1527 Franklin Avenue, Suite 301
Mineola, New York 11501
P: (516) 414-2900
F: (888) 688-4206